[Cite as *Calista Ents. v. Oxford Bd. of Zoning Appeals*, 2024-Ohio-34.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| CALISTA ENTERPRISES, LLC, | : | |
| Appellant, | : | CASE NO. CA2023-06-063 |
| | : | O P I N I O N |
| - vs - | | 1/8/2024 |
| | : | |
| OXFORD BOARD OF ZONING APPEALS, | : | |
| | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2022 07 1142

Jack F. Grove, for appellant.

Coolidge Wall Co., L.P.A., Christopher R. Conard and Benjamin A. Mazer, for appellee.

**PIPER, J.**

{¶ 1} Appellant, Calista Enterprises, LLC ("Calista"), appeals the Butler County Common Pleas Court's judgment affirming the decision of the Oxford Board of Zoning Appeals ("BZA") to deny Calista's request for a variance. Calista argues that it is only making a de minimis request that should have been allowed.

**FACTS AND PROCEDURAL HISTORY**

{¶ 2} This case concerns a parcel of land located at 314 University Avenue, Oxford, Ohio ("Property"). The Property is currently being used as a single-family dwelling; however, Calista intends to build a new three-family dwelling on the Property.

{¶ 3} The record shows the Property was previously in a single-family zoning district. In 2017, the Property was rezoned to allow for single-family dwellings, two-family dwellings, and three-family dwellings, provided the parcel meets the lot requirements. The only requirements relevant to this appeal are the minimum lot requirements set forth in the table below:

| LOT REQUIREMENTS | SINGLE-FAMILY DWELLINGS | TWO-FAMILY DWELLINGS | THREE-FAMILY DWELLINGS |
|---|---|---|---|
| Minimum Lot Area (Square Feet) | 4,000 | 6,000 | 8,000 |
| Minimum Lot Width (Feet) | 40 | 50 | 60 |
| Minimum Lot Frontage (Feet) | 40 | 50 | 60 |

{¶ 4} It is undisputed that Calista's Property is 10,192 square feet and is 56 feet wide by 182 feet long. Therefore, the construction of a three-family dwelling requires a variance because it is below the minimum lot width by four feet.

{¶ 5} Calista filed a petition requesting an area variance for a three-family dwelling. Calista's petition came for a hearing before the BZA on June 28, 2022. The BZA heard testimony from four people: (1) the City Planner, Zachary Moore, (2) an architect on behalf of Calista, Scott Webb, (3) a zoning professional on behalf of Calista, Greg Dale, and (4) an individual who owns property near Calista.

{¶ 6} The testimony of Moore, Webb, and Dale mostly centered on the factors the BZA must consider and weigh in determining whether practical difficulties exist sufficient to

warrant a variance. Those factors are:

> A. Whether the property in question will yield reasonable return or whether there can be any beneficial use of the property without the variance;

> B. Whether the variance is substantial;

> C. Whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance;

> D. Whether the variance would adversely affect the delivery of governmental services (i.e. water, sewer, garbage);

> E. Whether the property owner purchased the property with knowledge of the zoning restriction;

> F. Whether the property owners' predicament feasibly can be obviated through some method other than a variance;

> G. Whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

> H. Any other relevant factor.

Oxford Zoning Ordinance 1139.02(c). After hearing the testimony, the BZA voted 3-1 to deny the variance.

{¶ 7} Calista appealed the BZA's resolution to the Butler County Court of Common Pleas. The parties submitted briefs in support of their respective positions and appeared before the common pleas court for argument. After considering the record before it, the common pleas court affirmed the BZA's resolution finding that Calista "failed to meet its burden of proof by a preponderance of the evidence that the BZA decision is unreasonable, arbitrary, and capricious." The common pleas court also found the BZA's decision was "supported by the preponderance of the substantial, reliable, and probative evidence." Calista timely appeals, raising a single assignment of error for review:

{¶ 8}   THE TRIAL COURT ERRED IN AFFIRMING THE BZA'S DENIAL OF AN AREA VARIANCE WHICH WAS THE PRODUCT OF INCONSISTENT REASONING, ARBITRARY ACTION, AND DISPARATE TREATMENT.

**STANDARD OF REVIEW**

{¶ 9}   R.C. Chapter 2506 governs appeals to the courts of common pleas from final orders of administrative officers and agencies of political subdivisions, including municipal boards of zoning appeals.  *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 22.

{¶ 10}   "'A common pleas court reviewing an administrative appeal pursuant to R.C. 2506.04 weighs the evidence in the whole record and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence.'" *Richard J. Conie Co. v. W. Jefferson Village Council*, 12th Dist. Madison No. CA2022-04-007, 2023-Ohio-876, ¶ 14, quoting *Bingham v. Wilmington Bd. of Zoning Appeals*, 12th Dist. Clinton No. CA2012-05-012, 2013-Ohio-61, ¶ 6.

{¶ 11}   "'An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope.'"  *Queen v. Union Twp. Bd. of Zoning Appeals*, 12th Dist. Fayette No. CA2015-05-011, 2016-Ohio-161, ¶ 13, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984).  The court of appeals reviews the common pleas court's judgment only on questions of law.  We do not have the same extensive authority to weigh the evidence.  *Mills v. Walnut Twp. Bd. of Zoning Appeals*, 4th Dist. Pickaway No. 22CA14, 2023-Ohio-4234, ¶ 45.  "Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion." *Richard J. Conie Co*. at ¶ 16.  "'In this context, a reversal 'as a matter of law' can occur only when, having viewed the evidence most favorably to the decision, there are no facts to support' the trial court's decision." *Mills* at ¶ 45, quoting *Austin v.*

*Cuyahoga Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 107247, 2019-Ohio-636, ¶ 23.

**VARIANCES**

{¶ 12} The purpose of a variance is to permit a variation from the strict interpretation of the Code so that no specific provision prevents development of a specific site that would otherwise not be possible and that would satisfy the general intent of the Code. Oxford Zoning Ordinance 1139.01(a). Generally, a variance permits a property owner to use his or her property in a manner that is otherwise prohibited. *Nunamaker v. Bd. of Zoning Appeals*, 2 Ohio St.3d 115, 118 (1982).

{¶ 13} In essence, the general purpose of the Code is to (a) encourage and facilitate orderly growth and development, (b) establish population densities in correlation to various public services, (c) conserve property value and encourage the most appropriate use of land, (d) protect from incompatible uses, (e) avoid inappropriate development of land and avoid damage from land development, and (f) further the future implementation of planning objectives while protecting existing uses and structures. Oxford Zoning Ordinance 1123.01.

{¶ 14} There are two types of variances, area variances and use variances. *Schomaeker v. First Nat'l Bank*, 66 Ohio St.2d 304, 306 (1981).

> A use variance permits land uses for purposes other than those permitted in the district as prescribed in the relevant regulation. An example of a use variance is a commercial use in a residential district. Area variances do not involve uses, but rather structural or lot restrictions. An example of an area variance is relaxation of setback lines or height restrictions.

*Id.* at 307.

{¶ 15} The standard for granting an area variance is a lesser standard than when a use variance is at stake. The applicant need only show "practical difficulties" for an area variance rather than "unnecessary hardship" for a use variance. *Kisil*, 12 Ohio St.3d at syllabus. The supreme court in *Duncan* set forth the seven factors to be considered and

weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of the property. Those factors include, but are not limited to:

> (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

*Duncan v. Middlefield*, 23 Ohio St.3d 83, 86 (1986).[1]

### ANALYSIS

**{¶ 16}** Calista argues that the evidence established practical difficulties because while having excess square footage over-all, it lacked only four feet in the lot width requirement. Calista maintains that the facts support the *Duncan* factors in favor of the requested variance. The BZA suggests that while the most reasonable return for the property would be a three-family structure, Calista could demolish the existing single-family and receive a reasonable return from building a two-family structure. This appears incongruous with the general purpose of promoting the most appropriate use, rather than the second most appropriate use.

**{¶ 17}** However, we are unable to complete our limited review of the common pleas court's judgment because it does not rely on factual determinations or findings from the BZA

---

1. These are the same factors listed in the Oxford Zoning Ordinance.

in support of its denial of the variance. The common pleas court identified R.C. 2506.04 as authority for the appeal, stated that it had considered the entire record, the briefs and considered the oral arguments presented by counsel, and found "the decision denying the area variance was supported by the substantial, reliable, and probative evidence." The common pleas court's judgment entry does not identify or analyze the evidence in the record, does not discuss any relevant testimony, and does not apply any evidence in the record to the "practical difficulties" factors articulated in *Duncan*.

{¶ 18} The common pleas court grappled with the applicable standard of review when the parties appeared for argument. The common pleas court stated that it was unsure if the proceedings were de novo and expressed uncertainty on whether it could "substitute my judgment on these other factors * * * and the weighing of the *Duncan* factors." While a hearing before the common pleas court "is not a de novo review, 'it often in fact resembles a de novo proceeding.'" *Cleveland Clinic Found.*, 2014-Ohio-4809 at ¶ 24, citing *Cincinnati Bell, Inc. v. Glendale*, 42 Ohio St.2d 368, 370 (1975). "R. C. 2506.04 requires the court to examine the substantial, reliable and probative evidence on the whole record, which in turn necessitates both factual and legal determinations." *Cincinnati Bell* at 370.

{¶ 19} Although in an administrative appeal, a common pleas court need not issue a detailed opinion in an administrative appeal or issue findings of fact and conclusions of law pursuant to Civ.R. 52, "for an appellate court to conduct a meaningful review, sufficiently detailed reasoning should be specified in the trial court's order." *ProTerra, Inc. v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 109278, 2020-Ohio-6739, ¶ 35; *Vang v. Cleveland*, 8th Dist. Cuyahoga No. 104994, 2017-Ohio-4187, ¶ 13. Here, absent any explanation or analysis by the common pleas court of the evidence in the record and whether Calista established practical difficulties, we cannot determine whether the common pleas court fulfilled its obligation under R.C. 2506.04, nor are we able to perform our more

limited appellate review. *See Vang* at ¶ 12 (reversing the trial court's decision affirming the zoning board's decision because the trial court's opinion lacked sufficient detail for the appellate court to determine if the trial court had abused its discretion)

{¶ 20} We note the BZA's decision itself was of little assistance to the trial court. And at the BZA hearing, the board members disagreed on whether the evidence supported various *Duncan* factors. In its complaint, Calista attached a copy of the denial decision from the BZA. The letter stated that the BZA voted 3-1 to deny the variance, "basing their decision upon the Decision Standards" listed below:

> Criterion A— Whether the property in question will yield reasonable return or whether there can be any beneficial use of the property without the variance
>
> Criterion E— [W]hether the property owner purchased the property with knowledge of the zoning restrictions
>
> Criterion G— [W]hether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.
>
> Criterion H— Any other relevant factor

{¶ 21} The decision letter did not mention any findings or refer to any evidence or testimony supporting the denial of the variance.[2] For example, the decision letter simply states "[a]ny other relevant factor" without any suggestion of what finding supported another relevant factor. Similarly, the decision letter does not address why the requested variance would not support the "spirit and intent" behind the zoning requirement and as to why substantial justice would not be done by granting a variance.

## CONCLUSION

{¶ 22} Because the common pleas court affirmed the BZA's resolution without

---

2. This seems contrary to Section 1139.02(d)(1) of the Zoning Ordinance, which states the BZA "shall grant, grant with conditions, or deny a variance application as presented and *shall clearly state the findings upon which its decision is based*." (Emphasis added).

sufficient detail to allow us to perform our limited review, we sustain Calista's sole assignment of error.

{¶ 23} Judgment reversed and remanded.

HENDRICKSON, P.J., and BYRNE, J., concur.